

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 26, 2021**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KRISU HOSPITALITY, LLC, | § | CASE NO. 19-20347-rlj11 |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION

Prior to filing this chapter 11 case, the debtor, Krisu Hospitality, LLC (Krisu), obtained a default judgment against Mukesh Bhakta (Bhakta) in Texas state court in the amount of $3,185,883.17. Bhakta appealed the default judgment to the Amarillo Court of Appeals but never posted a supersedeas bond to stay collection of the judgment. Krisu was then free to collect on the money judgment and did so. While the case was on appeal, Krisu collected at least $120,496.86 in cash and goods (consisting of gold and jewelry) from Bhakta. The state appellate court ultimately reversed the default judgment and remanded the action back to the trial court where it is still pending. Bhakta contends that Krisu must pay back what it collected and is asking that he be allowed an administrative claim under § 503(b)(1)(A) for the amount

collected.¹ Both Krisu and Centennial Bank, a secured creditor, filed objections to Bhakta's request. For the reasons stated below, the Court denies Krisu's request.

The Court has jurisdiction of this action under 28 U.S.C. §§ 1334(b) and 157(b)(2)(B).

I.

The basis of the state court action is a construction contract dispute between Krisu and Bhakta.² Krisu contracted with Bhakta (and his business M&L Builders) in September of 2014 to construct a La Quinta Inn and Suites within 365 days for $4,010,152.00. According to Krisu, the construction was deficient and caused property damage that cost Krisu an additional $1,900,554.00 to remedy. The hotel was not completed until December of 2016. Krisu allegedly made demand on M&L Builders in May of 2017 that was unanswered. Thereafter, Krisu filed suit in July 2017 for breach of contract; negligence; negligent hiring, supervision, and retention; and breach of implied warranty of good and workmanlike services. In August 2017, Krisu filed a motion for a default judgment, which was granted the next week after the state court conducted an evidentiary hearing. In November 2017, Bhakta filed a notice of appeal but did nothing to stay collection of the judgment; four days later, Krisu collected $83,954.86 from an account owned by Bhakta under an *agreed* garnishment order issued by the state court. A few months after that, Krisu collected jewelry, gold, and cash from Bhakta's safety deposit box at Community Bank.

Krisu filed chapter 11 bankruptcy on November 4, 2019, and is the debtor-in-possession operating the hotel. On November 20, 2019, the Amarillo Court of Appeals reversed the default

---

¹ All § references refer to 11 U.S.C. unless otherwise stated.
² The suit was actually against Bhakta and his company M&L Builders. Bhakta and M&L Builders were found to be jointly and severally liable on the judgment. M&L Builders filed chapter 7 bankruptcy in February of 2018. According to M&L Builders' Statement of Financial Affairs, Bhakta was the president of the company and owned 50% of the company. On May 1, 2018, the Amarillo Court of Appeals severed the appeal upon Bhakta's motion. The default judgment reversal was to Bhakta only, and presumably M&L Builders has no assets to collect for the judgment.

judgment against Bhakta for insufficient service and remanded the case back to the trial court. On July 22, 2020, the clerk of the Amarillo Court of Appeals issued a mandate in accordance with the judgment pursuant to Texas Rule of Appellate Procedure 18.1, which officially sent the case back to the trial court.

Bhakta filed his application for administrative expense on October 26, 2020, for the monies Krisu collected during the pending appeal. Bhakta claims that once the Amarillo Court of Appeals' mandate was issued, Krisu was required, under the doctrine of restitution, to immediately pay to Bhakta all the monies it had previously collected in partial satisfaction of the default judgment. Krisu has not paid the monies and is, according to Bhakta, therefore wrongfully retaining money belonging to Bhakta and is liable to Bhakta in tort for money had and received, as well as conversion of the gold and jewelry collected. Because the reversal happened after Krisu filed bankruptcy, Bhakta says that these are post-petition torts committed by the debtor that create an administrative expense in his favor under § 503(b)(1)(A). Bhakta emphasizes that Krisu committed such torts *by retaining* the collected funds and property as the debtor-in-possession.[3] Last, Bhakta states that the claims are administrative expenses based on the torts-exception to the benefit-of-the-estate requirement, under the *Reading*[4] exception that allows post-petition torts to qualify as administrative expense claims under § 503(b)(1)(A).

Krisu and Centennial Bank both filed objections to the application. Krisu objects to the claim because the underlying payments are for pre-petition claims that are (i) still pending, (ii) for construction services Bhakta was contractually obligated to perform, and (iii) not actual or necessary costs to preserve the debtor's estate. Additionally, Krisu says that Bhakta has not established the elements for money had and received or conversion. Last, Krisu also asserts an

---

[3] Bhakta emphatically says that the money is "due NOW." ECF No. 91 ¶ 1 (all caps in original).
[4] *Reading Co. v. Brown*, 391 U.S. 471, 485 (1968).

affirmative defense, claiming that a Rule 11 agreement between Krisu and Bhakta establishes that the collected monies were a voluntary payment.[5] Centennial Bank argues that Bhakta does not have an administrative claim because the claim is based on pre-petition conduct and has not matured since the merits underlying the state court action are still pending.

II.

A. Restitution Claim

Restitution is a remedy for an unjust enrichment claim where "[a] person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution and Unjust Enrichment § 1 (Am. L. Inst. 2011); *see also Developments in the Law—Unjust Enrichment: Introduction*, 133 Harv. L. Rev. 2062, 2062 (2020). Many times, restitution is used to remedy or recover a benefit conferred by a judgment that is subsequently set aside. A judgment debtor's entitlement to restitution is only as much "as necessary to avoid unjust enrichment." Restatement (Third) of Restitution § 18 cmt. e (Am. L. Inst. 2011); *see also Miga v. Jensen*, 299 S.W.3d 98, 105 (Tex. 2009) ("Restitution is rooted in principles of unjust enrichment.").

In Texas, "[r]estitution after reversal has long been the rule." *Miga v. Jensen*, 299 S.W.3d at 101; *see also Cleveland v. Tufts*, 69 Tex. 580, 583 (1888) ("It is settled that money paid upon a judgment afterwards reversed may be recovered by the party making the payment."). "When a judgment is reversed, the prevailing party is entitled to restitution of any sum that it paid in satisfaction of the judgment." *J & J Container Mfg., Inc. v. Cintas-R U.S., L.P.*, 516 S.W.3d 635, 638 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Bank of U.S. v. Bank*

---

[5] Voluntary payment is a defense recognized under Texas law that is likely unenforceable here because the Rule 11 agreement wasn't filed in the state court. Regardless, the Court, by denying Bhakta's request for an administrative claim for the reasons stated, need not further address this defense.

*of Wash.*, 31 U.S. 8, 17 (1832) ("On the reversal of the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he lost."). If the party that collected money during the pendency of appeal does not return it after reversal, the prevailing appellant may seek judicial assistance for the money's return through restitution. *Salgo v. Hoffman*, 521 S.W.2d 922, 925 (Tex. Civ. App.—Dallas 1975, no writ). Restitution may be judicially determined after an evidentiary hearing establishing with certainty what was lost. *Outdoor Sys., Inc. v. BBE, L.L.C.*, 105 S.W.3d 66, 75 (Tex. App.—Eastland 2003, pet. denied). Such judicial determination does not have to be brought in a separate action but may be adjudicated in the same suit. *Id.* The court's power to enforce restitution is "equitable in nature" and therefore "restitution pursuant to this power is a matter of equity rather than a matter of right." *In re Deepwater Horizon*, 845 F.3d 634, 638 (5th Cir. 2017) (citing *Atlantic Coast Line R. Co. v. Florida*, 295 U.S. 301, 310 (1935); *Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996)).

Texas courts have not clearly established whether restitution is absolute after reversal and remand when the merits of the case have yet to be decided. *See Peticolas v. Carpenter*, 53 Tex. 23, 29 (1880) ("Where a judgment for debt is reversed after it has been enforced by execution, and the case is finally decided in favor of defendant, he is certainly entitled to restitution."). One case, though, suggests that restitution may be appropriate even when the merits are still pending. The Texas Supreme Court determined that a defendant was entitled to restitution for property seized by the plaintiff. The plaintiff seized the property based on a default judgment that was entered against the defendant. The defendant appealed the default judgment but did not post a supersedeas bond. The court of appeals reversed the default judgment for improper service. The underlying merits of the case were still being litigated when the defendant requested restitution

of the property seized; the Texas Supreme Court determined that the defendant was entitled to recover the property where the judgment had been reversed. *In re Disc. Rental, Inc.*, 216 S.W.3d 831, 832 (Tex. 2007) (defendant asked for return of property under § 34.021 of the Texas Civil Practice and Remedies Code, which states "A person is entitled to recover his property that has been seized through execution of a writ issued by a court if the judgment on which execution is issued is reversed or set aside and the property has not been sold at execution").

The Restatement on Restitution, however, suggests that restitution may be delayed when the underlying merits have not yet been decided, to avoid "a circuity of action." Restatement (Third) of Restitution and Unjust Enrichment § 18 cmt. e (2011) ("In some circumstances—as where a case has been remanded for retrial, and the trial court perceives a likelihood that the original judgment will be at least substantially reinstated—the court might reasonably defer the question of restitution pending further consideration of the merits of the dispute, simply to avoid a circuity of action.").

B. Administrative Expense Claim Under the Bankruptcy Code

In bankruptcy, administrative expenses are given priority over most unsecured claims in the distribution of estate assets. *See* § 507(a)(2). These administrative expenses include the actual and necessary costs of preserving the estate. *See* § 503(b)(1)(A). "[T]o qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001); *see also Toma Steel Supply, Inc. v. TransAmerican Nat. Gas Corp. (In re TransAmerican Nat. Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992) ("A prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession;

and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern.").

The requirement that an expense arise post-petition, and therefore from actions taken by the debtor-in-possession, is tied to the purpose of § 503(b)(1)(A), which "is designed to address a specific business problem." *In re Whistler Energy II, L.L.C.*, 931 F.3d 432, 441 (5th Cir. 2019). The problem is that third parties may refuse to extend credit or engage in business with the debtor out of fear of not getting paid. Section 503 alleviates this problem by encouraging "third parties to provide necessary goods and services to the debtor-in-possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid." *In re TransAmerican Nat. Gas Corp.*, 978 F.2d at 1420. "This incentive is not required, however, when the relevant obligation pre-dates the bankruptcy or when the debtor-in-possession does not want or need the services at issue." *In re Whistler Energy II, L.L.C.*, 931 F.3d at 442. An administrative claim, therefore, "must have arisen from a transaction with the debtor in possession," as opposed to a pre-petition debtor. *In re Phones for All, Inc.*, 288 F.3d 730, 732 (5th Cir. 2002) (quoting *In re Com. Fin. Servs., Inc.*, 246 F.3d 1291, 1294 (10th Cir. 2001)).

The second requirement, benefit to the estate, is the courts' way of testing whether a particular expense was "necessary" to the estate. *See In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998). One exception to the benefit requirement is torts committed by the trustee or debtor-in-possession while operating the business. *Reading Co. v. Brown*, 391 U.S. 471, 485 (1968). This is commonly known as the *Reading* exception. The *Reading* exception is an "exception to the requirement that there be an *actual benefit* to the estate before a claim can be accorded administrative priority [when] torts [are] committed by the trustee or debtor-in-possession during the course of a chapter 11 proceeding." *In re ATP Oil & Gas Corp.*, No. 12-

7

36187, 2014 WL 1047818, at *9 (Bankr. S.D. Tex. Mar. 18, 2014) (emphasis in original) (citations omitted). The policy behind the exception is "that it simply is not fair to deny innocent victims compensation for injuries they would not have incurred had the law not allowed the debtor to continue operating its business." *Pa. Dep't of Env't Res. v. Tri-State Clinical Labs., Inc.*, 178 F.3d 685, 691 (3d Cir. 1999).

Generally, when a tort is committed post-petition, the two important factors in determining whether a claimant qualifies for the *Reading* exception in the Fifth Circuit are: (1) the wrongful nature of the trustee's, or debtor-in-possession's, act; and (2) whether the act was committed in the course of operating the debtor's business. *In re Jack/Wade Drilling, Inc.*, 258 F.3d at 390; *see also In re Dahlgren Int'l, Inc.*, 147 B.R. 393, 402 (N.D. Tex. 1992) ("damages for claims that arise during, and are caused by, the reorganized operation of a debtor's business —although not ultimately serving to preserve the estate—also have been held to satisfy section 503(b)(1)(A) on grounds that they are necessary costs and expenses of the estate"); *In re Brooke Corp.*, 485 B.R. 650, 659 (Bankr. D. Kan. 2013) ("the scope of § 503(b)(1)(A) is expanded to encompass tort claims arising from postpetition conduct undertaken in the operation of the estate's business").

"The claimant bears the burden of proving by a preponderance of the evidence that its claim qualifies as an administrative expense." *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 517 (N.D. Tex. 2019) (citation omitted).

III.

A. Post-Petition Claim and the Debtor-in-Possession

To be an administrative claim, the transaction must have occurred post-petition. This is also true, as observed by circuit courts, when the "transaction" is a tort. *See In re Brooke Corp.*,

485 B.R. at 658 (citing *In re CF & I Fabricators of Utah, Inc.*, 150 F.3d 1293, 1298 (10th Cir. 1998)); *Woburn Assoc. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 6 (1st Cir. 1992) (emphasized that the basis of the suit was from pre-petition conduct and that post-petition *operation* of the business did not cause the claim to arise and therefore could not be an administrative expense claim); *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 817 (6th Cir. 1997) (cases following *Reading* exception still require "that the liability at issue arise post-petition"); *In re Jartran, Inc.*, 732 F.2d 584, 588–90 (7th Cir. 1984) (same); *In re Abercrombie*, 139 F.3d 755, 758 (9th Cir. 1998) (same).

To determine whether a transaction or tort took place pre- or post-petition, a majority of courts look to "when the acts giving rise to a liability took place, not when they accrued." *In re Sunarhauserman, Inc.*, 126 F.3d at 818 ("regardless of the substantive law on which the claim is based, the proper standard for determining that claim's administrative priority looks to when the acts giving rise to a liability took place, not when they accrued"); *see also In re Com. Fin. Servs., Inc.*, 246 F.3d 1291, 1295 (10th Cir. 2001) (to determine administrative priority, courts look to "when the acts giving rise to a liability took place, not when they accrued") (quotation omitted); *In re Pan Am. Hosp. Corp.*, 364 B.R. 839, 843–44 (Bankr. S.D. Fla. 2007) (stating that the time when the act giving rise to the claim was performed determines if a claim arose pre- or post-petition); *In re McCormick*, No. 06-80976, 2007 WL 1792509, at *2 (Bankr. M.D.N.C. June 18, 2007) ("This means that the actual acts giving rise to an estate's liability for expenses must occur post-petition—it is not enough that liability accrues post-petition."); *In re M Grp., Inc.*, 268 B.R. 896, 901 (Bankr. D. Del. 2001) (same).

Examination of when a liability arises—and not when the claim accrues—follows the statutory policy of encouraging third parties to engage in business with a debtor. For example,

where a debtor enters into a contract pre-petition but payment on the contract does not accrue until post-petition, such claim is a pre-petition claim and thus does not qualify for administrative priority treatment. *See* 4 Collier on Bankruptcy ¶ 503.06[3]; *see also In re Jartran, Inc.*, 732 F.2d at 587–88. This supports the business-problem policy because a transaction or act taken pre-petition that gives rise to liability does not induce anyone to do business with the debtor post-petition where the post-petition claim accrual is based on pre-petition conduct.[6]

For example, a case from the Ninth Circuit found that even where a debtor engaged in misconduct post-petition, the claim associated with the misconduct was connected to a pre-petition fraud claim and thus was not allowed as an administrative claim under § 503. *Kadjevich v. Kadjevich (In re Kadjevich)*, 220 F.3d 1016 (9th Cir. 2000). In *In re Kadjevich*, a creditor filed an administrative claim application for attorney's fees awarded to him by a state court post-petition. The creditor had brought a fraud action against the debtor in state court pre-petition that was ultimately resolved by a settlement. The debtor breached the settlement post-petition, and the state court awarded attorney's fees to the creditor for the breach. The Ninth Circuit determined that the fee award resulted from a pre-petition tort claim, and the fact that the debtor did not engage in the misconduct that caused the fees to be awarded until after he filed bankruptcy did not change the fundamental pre-petition nature of the fraud action and of the total resulting judgment. *See also In re Specialized Clutch & Brake of Stockton, Inc.*, No. 05-cv-01141, 2006 WL 8462187, at *3 (E.D. Cal. Apr. 13, 2006) ("regardless of their timing or nature,

---

[6] *In re Jack/Wade Drilling, Inc.*, though, suggests that the Fifth Circuit does not accept such a bright line rule that claims that accrue post-petition based on pre-petition conduct are considered pre-petition claims. In that case, the chapter 7 trustee brought an adversary proceeding against the claimant for breach of contract. The trustee lost the suit, and the court awarded attorneys' fees to the claimant based on the pre-petition contract. The Fifth Circuit stated that they wanted to avoid placing a fictitious label on the award as pre-petition since the claimant did not have damages or rights to damages until the trustee brought the suit and lost. *In re Jack/Wade Drilling, Inc.*, 258 F.3d at 389 n.3. This is a distinction recognized by a few other courts where a debtor or trustee brings a frivolous suit or continues prosecution of a frivolous suit post-petition. This distinction, though, does not apply to this case at this time.

all of the awards resulted from the same suit (filed pre-petition) and therefore, all arose *pre-petition*") (emphasis in original).

Bhakta has not proved by a preponderance of the evidence that the claimed expense arose post-petition. While the alleged right to restitution did not accrue until the Amarillo Court of Appeals issued its mandate after the petition date, the restitution claim is based on the collection of money and personal items that occurred pre-petition, by the pre-petition debtor, and relates to pre-petition state court litigation. The acts underlying the liability for restitution are Krisu's pre-petition collection efforts. The assorted tort claims that are related to the restitution claim are also inextricable based on Krisu's pre-petition collection efforts and the pre-petition state court litigation. Although the alleged right to restitution and subsequent torts became actionable post-petition, the accrual date does not fundamentally change the pre-petition nature of the claim.

Bhakta's application for administrative expense fails because his restitution claim and tort claims are for pre-petition actions.

B. Benefitted the Estate/*Reading* Exception

Even if the Court were to determine that the claim took place post-petition, Bhakta's administrative claim application still fails because it does not fit within the *Reading* exception. Bhakta asserts that the restitution claim "benefits" the estate and should be granted priority based on the tort exception created under the Supreme Court's *Reading* decision. The *Reading* exception has been adopted by the Fifth Circuit. *See, e.g.*, *In re Al Copeland Enters., Inc.*, 991 F.2d 233, 239 (5th Cir. 1993) (*Reading* survived amendments to the Code); *In re Broughton Ltd. P'ship*, 474 B.R. 206, 217 (Bankr. N.D. Tex. 2012) ("It has been black letter law since the Supreme Court rendered its decision in *Reading Co. v. Brown*, 391 U.S. 471, 478, 88 S.Ct. 1759,

20 L.Ed.2d 751 (1968), that torts committed by an estate representative in the course of performing his, her or its duties give rise to claims entitled to administrative priority.").

The two *Reading* factors require the Court to determine whether 1) Krisu acted wrongfully, and 2) whether "the act was committed in the course of operating the debtor's business so as to improve the position of existing creditors." *See In re Willow Bend Ventures, LLC*, No. 17-11178, 2019 WL 2252498, at *6 (Bankr. E.D. La. May 24, 2019) (quoting *In re Jack/Wade Drilling, Inc.*, 258 F.3d at 390).

To determine whether a tort under the *Reading* exception may be an administrative expense, many courts focus on whether the tort occurred during the operation of the debtor's business post-petition. *See In re GT Advanced Techs., Inc.*, 547 B.R. 3, 12–13 (Bankr. D.N.H. 2016); *In re Corbett*, 550 B.R. 170, 185 (Bankr. D. Mass. 2016); *In re Energy Conversion Devices, Inc.*, 528 B.R. 697, 709 (Bankr. E.D. Mich. 2015) ("Courts applying the *Reading* doctrine have limited administrative expense priority to claims arising from the bankruptcy debtor's operation of its business. . . . [Creditor's] claim does not arise from the debtor in possession['s] operation of its business after filing bankruptcy."); *In re RadLAX Gateway Hotel, LLC*, 447 B.R. 570, 576–77 (Bankr. N.D. Ill. 2011); *In re Old Carco LLC*, No. 09-cv-50002, 2010 WL 4455648, at *4 (S.D.N.Y. Nov. 2, 2010) (stating that under *Reading*, a claim may be an administrative expense if the expense is "ordinarily incident to operation of a business"); *Suntrust Bank v. Roberson (In re Baseline Sports, Inc.)*, 393 B.R. 105, 130 (Bankr. E.D. Va. 2008) ("[P]ost-petition torts committed by the debtor-in-possession while acting in the furtherance of the operation of the business satisfy the second or 'burden' prong of the administrative expense test, and claims for such torts may be accorded priority as an administrative expense."); *In re Unidigital, Inc.*, 262 B.R. 283, 290 (Bankr. D. Del. 2001)

(denying administrative claim where tort, if there even was one, did not arise from the operation of the debtor's business). This is because the "*Reading* exception provides that a post-petition tort committed by the debtor-in-possession within the course and scope of its continued operation of the estate's business may, itself, be considered a cost of doing business and is, therefore, entitled to administrative expense priority under § 503(b)(1)(A)." *In re Blanchard*, 547 B.R. 347, 353 (Bankr. C.D. Cal. 2016).

The alleged wrong here was not committed in the course of Krisu's hotel operations. Krisu's retention of the collected money, if it is a tort, is within the context of the pre-petition state court litigation that remains ongoing; it does not arise from Krisu's operation of its business after filing for bankruptcy.

### C. Money Had and Received and Conversion

Bhakta also fails to establish the torts supporting the administrative claim application. He first asserts that money had and received is a tort action. An action for money had and received is an equitable remedy and not considered a tort. *See, e.g.*, *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) ("Money had and received is an equitable doctrine applied to prevent unjust enrichment"); *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162 (Tex. 2007) ("A claim for 'money had and received' is equitable in nature."); *Mayers v. Addison Brown, LLC*, No. 19-cv-3043, 2020 WL 7646973, at *4 (N.D. Tex. Dec. 22, 2020) ("A money-had-and-received claim is an equitable doctrine applied to prevent unjust enrichment. . . . [it] is not premised on wrongdoing, but instead looks to whether a defendant has received money that rightfully belongs to another."). A money had and received claim is not a tort action that invokes the *Reading* exception.[7]

---

[7] There are other unresolved issues with this claim. The Fifth Circuit recently acknowledged a dispute in Texas where "courts are divided on whether unjust enrichment is recognized as an independent cause of action or is merely

As for conversion, Bhakta has not alleged facts sufficient to establish the elements of conversion. Bhakta's brief provides the elements of conversion. "To succeed on a conversion claim under Texas law, the plaintiff must prove that '(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused.'" *U.S. v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012) (many courts also require that a plaintiff prove injury). "Conversion generally takes place only after refusal of a demand for return of the property, and only extraordinary circumstances excuse the need for a demand." *In re TXNB Internal Case*, 483 F.3d 292, 307 (5th Cir. 2007); *see also Guillory v. Dietrich*, 598 S.W.3d 284, 294 (Tex. App.—Dallas 2020, pet. denied) (stating that where a person initially acquires possession of the property lawfully, "ordinarily, a demand and refusal are required to establish conversion"). Bhakta has not alleged demand for the property's return or provided an excuse for not making such demand; he states that filing the application was the demand. Without such allegations, the Court cannot find conversion to support an administrative expense application.[8]

### D. "Actual" Expense

Section 503(b)(1)(A) requires that an expense be "actual" in order to qualify for administrative priority. While there are few cases on the "actual"-expense requirement, courts have determined that there cannot be an administrative claim for a contingent expense. *In re Corbett*, 550 B.R. at 187 (contingent damage expenses that depended on outcome of pending

---

recognized as a quasi-contractual theory of recovery." *Matter of Okedokun*, 968 F.3d 378, 391 (5th Cir. 2020) (discussing money had and received claim). The court goes on to state that "a plaintiff can only recover [for unjust enrichment claim/money had and received] when 'one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Id.* (quoting *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

[8] This claim also depends on whether or not Bhakta is entitled to restitution. If not, or not at this time, then there is no wrongful exercise of control over the property to support a conversion claim.

litigation was not an "actual" expense entitled to administrative priority); *In re Rock & Republic Enters.*, No. 10-11728, 2011 WL 4756571, at *5 (Bankr. S.D.N.Y. Oct. 7, 2011); *In re Oldco M Corp.*, 438 B.R. 775, 786 (Bankr. S.D.N.Y. 2010); *In re HNRC Dissolution Co.*, 371 B.R. 210, 225 (E.D. Ky. 2007), *aff'd*, 536 F.3d 683 (6th Cir. 2008) (claimed expenses were not "actual" because they had not been realized yet).

Bhakta's asserted administrative expense is not for an "actual" expense. The merits of Krisu's lawsuit against Bhakta are still being litigated in state court. If Krisu is successful, Bhakta will be liable for more than the collected amount, even if only five percent of the alleged damages are awarded. If Krisu is not successful, there is no doubt that Bhakta would have a claim for return of the collected money and property. But these claims are contingent upon future court determinations. Bhakta's claim is unfit for priority designation at this time. Such uncertain future determinations make it impossible to find that Bhakta's claim is an "actual" expense to the bankruptcy estate.

IV.

The Court denies Bhakta's administrative expense application. The claimed expense is for alleged torts that are pre-petition in nature and were not committed within the scope of operating Krisu's business. Bhakta failed to prove the alleged torts, and the alleged claim is not an actual expense.

### End of Memorandum Opinion ###