

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed July 28, 2021

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| KRISU HOSPITALITY, LLC, | § § | CASE NO. 19-20347-rlj11 |
| Debtor. | § § | |

## MEMORANDUM OPINION AND ORDER

The Court, upon careful consideration of the arguments made by Mukesh Bhakta in support of his motion asking for reconsideration of the Court's denial of his application for allowance of an administrative claim, denies Bhakta's motion. The Court's Memorandum Opinion and its Order of March 26, 2021 adequately address the Court's bases for denial. The Court will, however, directly address arguments made by Bhakta.

I.

A.

A motion to allow or amend an order (or for reconsideration as requested here) filed before expiration of the time to appeal is considered under Rule 59(e) of the Federal Rules, as

incorporated by Rule 9023 of the Bankruptcy Rules.[1] Bhakta does not contend that he has new evidence or new law.[2] He argues that the Court misconstrued or misanalyzed the facts and law.

B.

1.

Bhakta complains of the Court finding that the garnishment was agreed to. It was agreed to. Bhakta's motion states that "[a]greeing to a garnishment, valid on its face, is hardly a concession against Krisu later illegally taking funds belonging to Bhakta." ECF No. 105 ¶ 4. Two points: First, the meaning of "concession against . . . later illegally taking funds" is ambiguous, and, regardless, the Court made no such "concession." Second, Bhakta concedes that Krisu never illegally took any funds. *See id*. ¶¶ 12, 13, 18.

2.

Bhakta is troubled with the Court's "reliance" on the Restatement of Restitution; he says that the Restatement "does not trump the Texas Supreme Court." *Id*. ¶ 5. The Court addressed Texas law on restitution, including the Texas Supreme Court's opinion in *In re Discount Rental, Inc.*, 216 S.W.3d 831 (Tex. 2007), which specifically concerned the return of property under § 34.021 of the Texas Civil Practice and Remedies Code. The Texas Supreme Court addressed a person's right to recovery of property that had been seized through execution when the judgment is set aside and "the property has not been sold at execution." *Id*. at 832 (quoting § 34.021 of the Tex. Civ. Prac. & Rem. Code). The Restatement on Restitution suggests that restitution may be delayed when the underlying merits of the parties' dispute, as is the case here, have not been

---

[1] "Federal Rules" refers to the Federal Rules of Civil Procedure; "Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.
[2] *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.") (omitted quotations and citation).

decided. The Court noted the distinctions between Texas law and the Restatement. It did not hold that the Restatement "trumps" the Texas Supreme Court. But the facts there are distinguishable from those here. And the question of whether any restitution right is ripe until there is a decision on the merits of the lawsuit is not dispositive here.

3.

Bhakta says that the Court misapplied the applicable law on whether a post-petition tort claim qualifies as an administrative claim under the Bankruptcy Code. This charge concerns the Court's application of the *Reading* exception (from *Reading Co. v. Brown*, 391 U.S. 471 (1968)) and its "misplaced" reliance on *In re Kadjevich*, 220 F.3d 1016 (9th Cir. 2000). Bhakta distinguishes *Kadjevich*, emphasizing that the basis for the administrative claim asserted there (and denied) was a pre-petition fraud action that "spilled over into post-petition enforcement cost." ECF No. 105 ¶ 9 (internal quotations omitted). He says there is no wrongful pre-petition conduct by Krisu and thus no "pre-petition wrong that has spilled over [here] to create post-petition damages." *Id*. "*Kadjevich* is simple [sic] not apposite to the case at bar," he concludes. *Id*. "There is simply nothing for the Court to link the conversion back to, pre-petition wise." *Id*. ¶ 13.

The *Reading* exception provides that post-petition torts committed by the debtor create an exception to the required benefit-to-the-estate element for an administrative claim. The Court understands that Bhakta says Krisu's tort(s) occurred post-petition when it failed to automatically, without demand, return the collected funds to Bhakta. The Court's opinion addresses the requirements for satisfying the *Reading* exception—the wrongful nature of the debtor's act and whether the act was committed in the course of the debtor's business. In assessing whether Krisu's "conduct"—not automatically returning funds it no longer had—must

relate back to the parties' pre-bankruptcy dispute and as evidenced by Krisu's suit against Bhakta, the Court looked to the *Kadjevich* opinion.

The facts of *Kadjevich* are analogous to the facts here. In *Kadjevich*, a creditor sued the pre-petition debtor in state court for fraud. The parties entered into a settlement; the bankruptcy followed. The debtor then breached the settlement. The state court awarded attorney's fees to the creditor for the breach. As stated in the Court's Memorandum Opinion, the Ninth Circuit held that though debtor's misconduct of breaching the settlement agreement happened post-petition, it did not alter the fundamental pre-petition nature of the fraud *action*. *In re Krisu Hosp., LLC*, No. 19-20347, 2021 WL 1186483, at *5 (Bankr. N.D. Tex. March 26, 2021). The awarded fees were pre-petition in nature because of the connectedness of the attorney's services to the pre-petition suit. *Id*. The suit was for fraud, but it was settled. Though not directly on point, *Kadjevich* is helpful in analyzing whether the alleged torts here must relate back, particularly when any right to a claim for restitution is subject to a determination on the merits of each party's claim(s) against the other.

Bhakta argues that *Kadjevich* does not apply because it concerned a fraud claim and here there was no wrongful conduct by Krisu that "spilled over" post-petition. That there was fraud *alleged* prior to the bankruptcy filing in *Kadjevich* is a distinction on the facts, but it is a distinction without significance. But like *Kadjevich*—and which is not addressed by Bhakta's motion—Bhakta does, he says, have claims against Krisu. In *Kadjevich*, the parties settled their claims. In neither was there wrongful *relevant* conduct that took place prior to the bankruptcy filing. The wrongful act in both cases—the debtor's breach of the settlement in *Kadjevich* and Krisu's failure to remit the collected proceeds—occurred post-petition. The claims by both parties here, just as in *Kadjevich*, "spill over" from their pre-petition relationship.

4.

At paragraph 14, Bhakta concludes that "[t]he wrongful taking and use of the Bhakta's [sic] money benefitted the bankruptcy estate" and that the amount involved, "[o]ver $100,000.00," is "a non-trivial sum." ECF No. 105 ¶ 14. He then notes that the money that Krisu collected from Bhakta "is gone" and that its spending "all happened pre-petition." *Id.* ¶ 15. He reasons that the funds had to have been used in the *Debtor's* operations. His claim thus deserves allowance as an administrative claim, emphasizing yet again that "the use of such funds by the Debtor was and remains lawful" and that "[t]he final conclusion of the Court on use for business purposes (Docket 103, p. 13) is just erroneous on the facts." *Id*. ¶¶ 18, 19. "The tort (refusal to pay monies owed) arises exactly and strictly out of business use of the Bhakta's [sic] monies." *Id*. ¶ 19.

First, Bhakta, despite his statements to the contrary, says that there was a wrongful taking and use of his money and that such usage benefitted the bankruptcy estate. Bhakta repeatedly admits that Krisu did nothing wrong by executing on the default judgment. He also recognizes that the collected funds were spent by the time the bankruptcy was filed.³ And such funds were used for the pre-filing Krisu's hotel operations. The Court has not been referred to any wrongdoing on Krisu's part in using the collected funds. The evidence reveals Bhakta has, at most, a claim against Krisu that he wants declared as an administrative priority claim. But Bhakta ignores the requirement that the alleged post-petition tort, if there was one, must have taken place in connection with Krisu's post-petition business operations.

Second, assuming Bhakta correctly concludes that the funds were used in some way for Krisu's business, the usage could have only benefitted Krisu's pre-petition business operations.

---

³ He does not mention any personal property that was collected.

And the so-labeled tort for failing to promptly return the funds to Bhakta after the judgment was set aside did *not* occur in connection with Krisu's post-petition business operations—such failure was not within the course and scope of, or incident to, Krisu's hotel operations.

5.

Bhakta challenges the Court's finding that he made no demand for return of the collected funds. He says, "[t]he MOR's [monthly operating reports] establish as a matter of law that the seized monies are gone, consumed in business operations, resulting in demand futility for Bhakta against the Debtor." *Id*. ¶ 21. On this same topic, Bhakta says the Court, on the "actual expense" issue, failed to address the record.

Bhakta did not make demand, and his insistence here that he be allowed an administrative claim defies his contention that demand was futile. This is also a new legal argument and thus improper. *See Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (stating that "courts will not address new arguments or evidence that the moving party could have raised before the decision issued" on a Rule 59(e) motion).

6.

Bhakta says, again questioning the Court's analysis of the issues, that the "Court *seems to assume* that Debtor gets to hold on to Bhakta's money in case it wins its lawsuit against Bhakta." ECF No. 105 ¶ 23 (emphasis added). And he then states that the Court ignored "Texas Supreme Court holdings (plural intended), that Bhakta is entitled to his money back right now, not after state court litigation." *Id*. ¶ 24.

Krisu exhausted the collected funds before the bankruptcy was filed; Krisu is not holding on to any property. Plus, Krisu's charge here arises not from the merits of any claims made by the parties, it arises from the intervening action of an appellate court and the consequences that

flow from it. Bhakta's claim does not satisfy the requirements for allowance of an administrative claim, either as typically considered or as qualified under the torts exception to conferred benefit.

7.

Finally, "[w]ithout beating the proverbial horse to death," Bhakta summarizes his arguments to attack the Court's "closing statement." *Id.* ¶ 25.

At the risk of finishing off such horse, the Court summarizes its findings and conclusions:

- Bhakta *may* have a restitution claim arising from the reversal of the default judgment.
- The restitution claim is not part of the claims on the merits that each party asserts against the other.
- To qualify as an administrative expense claim under § 503(b)(1)(A), the expenses must be actual, necessary expenses of preserving the bankruptcy estate—they must benefit the bankruptcy estate.
- The collected funds were exhausted prior to the bankruptcy; they thus cannot have benefited the bankruptcy estate that is created upon filing of the bankruptcy case.
- Bhakta relies on the torts exception—the so-called *Reading* exception—to the *actual* benefit element.
- For the tort-exception to apply, the Court must consider (1) the wrongful nature of the alleged tort and (2) whether it was committed in the course of the debtor-in-possession's business.
- The alleged torts here relate back to the pre-petition lawsuit.

- Even if the torts are deemed to have arisen post-petition, such alleged tortious conduct must have been committed by an estate representative in the course of performing his or her duties as an employee.

- The alleged tort here—Krisu failing to return funds it no longer had—did not occur in connection with its *post-filing* business operations.

- Bhakta argues that Krisu committed a tort *post-petition* while also insisting that the funds resulting from the tort were used in its *pre-petition* business, which is impossible.

Nothing stated here is intended to limit or qualify the Court's findings and conclusions of its Memorandum Opinion and its Order on the Memorandum Opinion.

All relief requested by Bhakta's motion for reconsideration is DENIED.

### End of Memorandum Opinion and Order ###